CORASH & HOLLENDER, P.C.
PAUL HOLLENDER, ESQ.
BEATA GADEK, ESQ.
1200 South Avenue, Suite 201
The Corporate Park of Staten Island
Staten Island, New York, 10301
Telephone: (718) 442-4424
Facsimile: (718) 273-4847

Proposed Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:                                                    CHAPTER 11

                                                          Case No.  22-41414-nhl
MENDEL PANETH

                         Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TO THE HONORABLE NANCY HERSHEY LORD
US BANKRUPTCY JUDGE:

**APPLICATION FOR AUTHORITY TO RETAIN ATTORNEYS**

The application of Mendel Paneth, ("Applicant"), the above-named Debtor and Debtor-in-Possession, respectfully shows:

1) On June 19, 2020, the Debtor filed in this Court a Petition, under Chapter 11 of the Bankruptcy Code, to effect a reorganization of his financial status and particularly of his debts owing to his creditors.

2) Applicant intends use this case, and the automatic stay provided herein, to re-establish a means for supporting himself as a graphic artist, editor and historian, after a 7-year battle with David Reiner, his former business partner, to steal his half-interest in an entity known as Kidline Enterprises, Inc. Debtor was the originator and creative force behind this company

which developed and published a Yiddish comic book for Hasidic youth. Reiner's role was intended to be limited to investing the initial capital of $150,000 to get the entity started, but when it became wildly successful in the US and in other countries with Ultra-Orthodox communities, Reiner engaged in a long-term campaign to squeeze Paneth out of the business.

3) Paneth, after 5 ½ years of putting up with Reiner's bad conduct, consulted a rabbi who was recommended to him as someone who resolved business disputes, seeking a quick and inexpensive solution. This rabbi promised to accomplish that objective within two meetings. After the thirds meeting with the two partners, the rabbi suggested a buyout between the partners, giving Paneth the first option, with a price reduced by a percentage to due to Reiner's conduct in violation of their Partnership Agreement.

4) Thereafter, he rabbi, after several weeks of "radio silence" in response to Paneth's followup texts and calls, and after direct conversations with Reiner, suddenly shifted course, scheduling four formal Arbitration Hearings over the next four months (comprising at least 26 hours of hearing time plus other time outside of hearings), and denying Paneth's request that the company, rather than the individuals pay the costs to be incurred in these additional sessions.. The rabbi charged $400 per hour, and each party also had to pay for both an attorney and a "Rabbinical Advisor" as to Jewish Law.

5) During the course of these Arbitration Hearings, Reiner, contrary to the interests of the company, prevented the change from the existing company which had delivered years of terrible service, to a new telephone provider. In the course of dealing with this issue, Paneth discovered the illegal recording on behalf of Reiner of phone conversations with not only customers, but also between, Paneth and his wife and between Paneth and his attorney, during the course of the pending arbitration proceedings.. This led to the first of four lawsuits

commenced by Paneth's wife (to whom Paneth's shares had been conveyed at Reiner's suggestion), individually and on behalf of the company, to stop Reiner's efforts: the first in Kings County, where the business was located, the others in Richmond County where Paneth resided

6) The first suit was against the telephone service provider.

7) The second suit was against Reiner and a new partner he took in, in violation of the Partnership Agreement with Paneth. This suit was to Rescind the Partnership Agreement.

8) The third suit was against Reiner's brother and the printing company he owned, which, it was then discovered, Reiner had used to triple the company's printing costs and thereby obtain kickbacks in violation of the Partnership Agreement with Paneth.

9) The fourth suit was against an IT company used by Reiner to break into Kidline's offices by disabling the security system and then to hack into Paneth's computer and emails.

10) Reiner, directly and indirectly, caused motions to be brought in the Kings county case to compel Arbitration according to Jewish Law, as per the Partnership Agreement, to dismiss certain cases and to consolidate them all in Kings County. He was successful in this endeavor, and, notwithstanding seeming bias, corruption, and fraud the Judge, pursuant to Reiner's request, ordered them to proceed with an additional round of "Arbitration" before the same Arbitrator who had obviously been coopted by Reiner..

11) Paneth complied with the Judge's direction. The Arbitration, however, became a charade, designed by the rabbi, to be a personal money-making machine, for which he scheduled <u>24 new hearing sessions</u> (*in addition* to the 7 from the first round of hearings). For Reiner, the hearings became a tool his war of attrition against Paneth. Paneth attended the first 12 sessions (comprising no less than 65 hours of session-time),(the last of which was on February 2, 2022),

before his family was involved in a car accident.

12) In January 2021, more than a year after the expiration of both Paneth's 5-year minimum term with Kidline and the 3-year restrictive covenant after his shares were transferred to his wife, Paneth commenced a new company, Hundred Publications, LLC from which he could pursue his creative talents.

13) Paneth's attempt to escape Reiner's stranglehold, was met, unfortunately with escalated battle by Reiner, who, after a year and a half of unsavory tactics succeeded in putting Hundred Publications out of business.

14) The filing of this case was designed to put a stop to the charade, to enable Paneth to create a new source of income to support his family, and hopefully to attain resolution of his claims against Reiner in an unbiased and incorruptible forum.

## Jurisdiction and Venue

15) This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§157 and 1334.  Consideration of this Application is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A).

16) Venue is proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

17) The statutory predicates for the relief requested herein are Bankruptcy Code §§105(a), 327 and 328.

## Relief Requested

18) Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a) the Debtor requests that the Court approve the retention of Corash & Hollender, P.C. as bankruptcy counsel for the Debtor.

## Effective Date

19) Inasmuch as the within application is being submitted shortly after the filing of the case, request is made that this application be granted, authorizing the Firm's retention, effective nunc pro tunc from the date of filing of the petition.

## Services to be Provided

20) Applicant, as such Debtor and Debtor-in-possession, respectfully submits that it is necessary that counsel be retained in its behalf in this proceeding, effective from the date of filing of the petition for the following purposes:

    a. To give Applicant legal advice with respect to its powers and duties, as Debtor and Debtor-in-Possession, in the continued operation of its business and management of its property.

    b. To take all necessary steps to enjoin and stay creditors who have already instituted, or who are about to institute suits against Applicant.

    c. To negotiate with Applicant's creditors in working out a plan of reorganization or liquidation and to take necessary legal steps to consummate such plan, including, if need be, negotiations to finance said plan.

    d. To prepare, in Applicant's behalf, both as Debtor and as Debtor-in-possession, necessary petitions, answers, applications, orders, reports and other necessary legal papers.

    e. To appear before the Bankruptcy Judge, and to protect Applicant's interests, as Debtor and Debtor-in-possession before said Judge, and to represent Applicant in all matters before said Judge.

    f. To assist Applicant in working out an arrangement with the Director of

Internal Revenue, and other tax agencies which may file claims in this proceeding.

      g.      To assist the Debtor-in-possession in negotiations with creditors, potential asset purchasers and other interested parties, in marshaling the debtor's assets, and in disposition of any assets, to enable Debtor to successfully conclude this Chapter 11 case, and to perform all other legal services for Applicant, as Debtor and Debtor-in-possession, as may be necessary herein.

### Reasons for Retention of the Firm

21)     Applicant knows the law firm, CORASH & HOLLENDER, P.C., and knows that they are experienced in reorganization and bankruptcy proceedings, and in proceedings before administrative agencies; Applicant has full confidence in the ability of these attorneys to handle all phases of this reorganization proceeding.

22)     To the best of Applicant's knowledge, said firm represents no interests adverse to this estate in the matter upon which they are about to be engaged, except as stated in the annexed affirmation of PAUL HOLLENDER.

23)     Applicant desires to retain said firm of attorneys because, of its expertise in bankruptcy law and related fields necessary to prosecute the within case.

### Notice

24)    3)     Notice of this Application has been provided to the Office of the United States Trustee.  The Debtor submits that under the circumstances, no other or further notice be given.

### Memorandum of Law

25)    4)     Because this Application presents no novel issue of law, it is requested that the requirement for a Memorandum of Law be waived.

**WHEREFORE**, the Debtor prays that he be authorized to employ and retain the firm of CORASH & HOLLENDER, P.C., to represent him as Debtor and Debtor-in-possession in this proceeding under Chapter 11 of the Bankruptcy Code, effective as of the filing of the petition herein, and that it have such other and further relief as to this Court may seem just.

Dated: Staten Island, New York
       July 22, 2022

                                                            _____/s/_____
                                                            Mendel Paneth
                                                     Debtor and Debtor-in-Possession

                                                     Corash & Hollender, P.C.
                                                     Proposed Attorneys for Applicant

                                                     By:_____/s/_____
                                                      Paul Hollender, Esq.
                                                     1200 South Avenue, Suite 201
                                                     The Corporate Park of Staten Island
                                                     Staten Island, New York 10314
                                                     (718) 442-4424

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:                                                    CHAPTER 11

Case No.  22-41414-nhl
MENDEL PANETH

 Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### AFFIRMATION OF PAUL HOLLENDER IN SUPPORT OF
### DEBTOR'S APPLICATION TO RETAIN CORASH & HOLLENDER AS COUNSEL

PAUL HOLLENDER, ESQ., an attorney admitted to practice before the Courts of the State of New York affirms under penalty of perjury:

1)      I am a principal in the law firm of CORASH & HOLLENDER, P.C. of 1200 South Avenue, Suite 201, Staten Island, New York 10314.

2)      The undersigned is the attorney who will bear primary responsibility for the representation whose authority is sought herein.

### Bankruptcy Experience

3)      The undersigned has read and is generally familiar with: (i) The Bankruptcy Reform Act of 1978 as amended; (ii) the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (11 U.S.C.), with current amendments; (iii) The Federal Rules of Bankruptcy Procedure; and (iv) The Local Rules of the United States Bankruptcy Court for the Eastern District of New York.

4)      The firm of CORASH & HOLLENDER, P.C. is competent to represent the interests of the entity on whose behalf representation is now sought in all proceedings now pending or which may reasonably be expected to be pending in this Court in the foreseeable future.

5) PAUL HOLLENDER, ESQ., a Partner in the firm, has been practicing Bankruptcy law since 1977, is certified by the American Board of Certification in both Consumer Bankruptcy Law and Business Bankruptcy Law since 1993 and has served for six years as a member of the Board of Directors of the certifying organization. BEATA GADEK, ESQ., also of counsel with the firm, has been practicing Bankruptcy law since 2012. Both Attorneys have represented Debtors in Chapter 11 cases throughout this period.

### Professional Fees and Expenses

6) The foregoing services are to be billed at our firm's current billing rates in effect at the time of rendering services. The present rates are: $475 per hour for Partners, $425 per hour for Associates and Of Counsel Attorneys and $175 per hour for Paralegals. Prior to the original Application herein the undersigned has received $5,000 from the Debtor by application of a credit balance from prior files handed by our office on his behalf . The undersigned has also received a bankruptcy retainer of $35,000 from Victor Einhorn, a friend of the Debtor, who has acknowledged his disinterestedness in both the Debtor's Retainer agreement and a separate Declaration.

7) In addition, the firm will bill for actual and necessary expenses including, copies, postage, on-line computer research, transportation, business meals, couriers, witness fees and other fees related to trials or hearings in these proceedings.

8) The firm intends to apply to the Court for allowance of compensation for professional services and reimbursement of expenses incurred in this case in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Orders and Local Rules of this Court.

9) The firm has agreed to accept as compensation from the debtor such sums as may be allowed by the Court on the basis of the professional time spent, the rates charged for such services, the necessity of such services to the administration of the estate, the reasonableness of

the time within which such services were performed in relation to the results achieved, and the complexity, importance, and nature of the problems, issues, or tasks addressed in this case.

### **Disinterestedness**

10)     The firm has undertaken a detailed search of its client database to determine and disclose whether it represents or has represented any significant creditors or insiders of the debtor and has located none. The firm has determined that no conflict of interest exists with regard to the Debtor. The undersigned and this firm are disinterested as that term is defined in 11 U.S.C. 101(14).

11)     Neither I, nor any member of my firm, now has, nor ever had, any connection with the above-mentioned Debtor and Debtor-in-Possession, its creditors, or any other party in interest herein or their respective attorneys, with the exception of prepetition services rendered to the Debtor and his wife in two matters: (i) resolution of a dispute with HB Quality Construction, Inc regarding renovations to their home and (ii) a case entitled Sury Paneth a/k/a Sarah Paneth and Mendel Paneth Individually and on behalf of Kidline Enterprises, Inc -against-David Reiner and Yoel Klein. My firm has been paid in full for all pre-petition services rendered to the Debtor and has no adverse interest to the Estate.

12)     Neither I, nor any member of my firm, represents any interest adverse to the Debtor and Debtor-in-Possession, or to this estate, in the matters upon which this firm is to be engaged herein.

Dated: Staten Island, New York
      July 22, 2022

_____/s/_____
PAUL HOLLENDER