UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                                            Chapter 11

      Mendel Paneth                                   Case no.  22-41414

                 Debtor.
------------------------------------------------------------x




## <u>PLAN OF LIQUIDATION</u>






Mark A. Frankel
BACKENROTH FRANKEL & KRINSKY, LLP
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544


ATTORNEYS FOR THE PROPONENT

## INTRODUCTION

David Reiner ("Proponent"), proposes this Plan of Liquidation for Mendel Paneth (the "Debtor"). UPON CONFIRMATION, THIS PLAN SHALL BE A BINDING OBLIGATION BETWEEN AND AMONG THE DEBTOR AND EACH OF THE DEBTOR'S CREDITORS (AS SUCH TERMS ARE DEFINED BELOW).

## DEFINITIONS

1.      "Administrative Expense" Any cost or expense of administration of the Bankruptcy Case entitled to priority under section 507(a)(1) and allowed under section 503(b) of the Bankruptcy Code, and any fees or charges assessed against the Debtor's Estate under Chapter 123, Title 28, United States Code.

2.      "Administrative Claims Bar Date" shall mean the last day to file requests for payment of Administrative Claims (except for Professional Fee Claims).

3.      "Administrative Expense Claim" shall mean claim for payment of an Administrative Expense.

4.      "Allowed Amount" shall mean the amount of an "Allowed Claim."

5.      "Allowance Date" shall mean the date which a Disputed Claim becomes an Allowed Claim by Final Order.

6.      "Allowed Claim" shall mean a Claim: (a) to the extent that a Proof of Claim is filed timely or, with leave of the Court late filed as to which (i) no party in interest files an objection or (ii) which is allowed by a Final Order; or (b) which is listed on the Proponent's

schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or contingent.

7.      "Allowed Secured Claim" shall mean a Secured Claim to the extent it is an Allowed Claim.

8.      "Allowed Unsecured Claim" shall mean an Unsecured Claim to the extent it is an Allowed Claim.

9.      "Arbitration" shall mean the pending arbitration in Brooklyn, New York, before Rabbi Bergman, involving, among others, the Debtor, Sarah Paneth, Reiner and Kidline.

10.      "Assets" shall mean any and all of the respective real or personal property of any nature of the Debtor, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, Cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, claims, Causes of Action and any other general intangibles of Debtor, of any nature whatsoever, including, without limitation, the property of the estate pursuant to section 541 of the Bankruptcy Code.

11.      "Avoidance Actions" shall mean all claims and causes of action which the Debtor has or had the power to assert pursuant to any or all of sections 510, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code.

12.      "Bankruptcy Case" shall mean this Chapter 11 bankruptcy case.

13.      "Bankruptcy Code" shall mean Title 11 of the United States Code (11. U.S.C. § 101 et. seq.)

14. "Bankruptcy Court" shall mean the Court as defined below.

15. "Bankruptcy Rule(s)" shall mean the Federal Rules of Bankruptcy Procedure as applicable to cases under the Bankruptcy Code, together with all amendments and modifications made from time to time thereto.

16. "Bar Date" shall mean October 25, 2022.

17. "Cash" shall mean all cash and cash equivalents which evidence immediately available funds in United States dollars.

18. "Causes of Action" shall mean any and all claims and causes of action of, and remedies granted to, the Debtor against any third party, including, without limitation, any avoidance claims or causes of action pursuant to sections 502, 506, 510, 541 through 545, 547 through 551, and/or 553 of the Bankruptcy Code and any claims pursuant to any other statutory or common law.

19. "Claim" shall mean a right to payment as set forth in § 101(5) of the Bankruptcy Code.

20. "Claimant" shall mean the holder of a Claim.

21. "Confirmation Date" shall mean the date of the entry of the Confirmation Order.

22. "Confirmation Hearing" shall mean the hearing pursuant to the Bankruptcy Code Section 1128 before the Bankruptcy Court regarding the proposed confirmation of the Plan.

23.     "Confirmation Order" shall mean the order of the Court confirming the Plan.

24.     "Court" shall mean the United States Bankruptcy Court for the EASTERN District of New York.

25.     "Creditor" shall mean any entity that holds a Claim against the Debtor.

26.     "Debtor" shall mean Mendel Paneth.

27.     "Disbursing Agent" shall mean the Plan Administrator.

28.     "Disclosure Statement" shall mean the disclosure statement filed by the Proponent with respect to this Plan.

29.     "Disputed Claim" shall mean the whole or any portion of any claim against a Proponent to which an objection is timely filed as to which a Final Order has not been entered allowing or disallowing such Claim or any portion thereof.

30.     "Effective Date" shall mean the first business day after the closing of the sale of the Property, which, absent further order of the Court, shall be no later than 180 days after the Confirmation Date.

31.     "Estate" shall mean the estate of the Debtor created upon the commencement of the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

32.     "Executory Contracts" shall mean "executory contracts" and "unexpired leases" as such terms are used within Section 365 of the Bankruptcy Code.

33. "Final Order" shall mean an order of the Court that has not been reversed, modified, amended or stayed, and as to which the time to appeal or to seek review or certiorari thereof has expired, and as to which no appeal, review or rehearing is pending.

34. "Legal Rate" shall mean the applicable interest rate as set forth in 28 U.S.C. §1961 as of the Petition Date.

35. "Lien" shall mean a charge against or interest in property to secure payment of a debt or performance of an obligation.

36. "Petition Date" shall mean June 19, 2022.

37. "Plan" shall mean this Plan of Liquidation, and any and all modifications and/or amendments hereto.

38. "Plan Administrator" shall mean _____.

39. "Plan Administrator Fund" shall mean $20,000 to be set aside from the Property Sale Proceeds, and then from the proceeds of Causes of Action to the extent necessary to pay fees and expenses of the Plan Administrator.

40. "Professional(s)" shall mean any entity or person employed pursuant to an order of the Bankruptcy Court in accordance with sections 327, 328, or 1103 of the Bankruptcy Code and to be compensated for services rendered pursuant to sections 327, 328, 329, 330 and/or 331 of the Bankruptcy Code.

41. "Professional Fee Claim" shall mean those fees and expenses claimed by a Professional pursuant to sections 330, 331 and/or 503 of the Bankruptcy Code.

42.     "Professional Fee Claim Bar Date" shall mean the last day for a Professional to file a Professional Fee Claim, which shall be no later than thirty (30) days after the Confirmation Date.

43.     "Property" shall mean the real property at 85 Bolivar St, Staten Island, New York.

44.     "Property Sale Proceeds" shall mean the proceeds of sale of the Property, less all charges to be incurred in connection with the marketing, negotiation, documentation, execution, and closing of the sale of the Property, including, without limitation, any fees and expenses paid to retain an auctioneer, real estate broker, and/or special real estate counsel.

45.     "Proponent" shall mean David Reiner.

46.     "Purchaser" shall mean the purchaser of the Property pursuant to the Plan.

47.     "Reiner" shall mean David Reiner.

48.     "Reorganized Debtor" shall mean the Debtor on and after the Effective Date.

49.     "Secured Claim" shall mean a Claim secured by a Lien on property included within the Debtor's Estate.

50.     "Secured Creditor" shall mean the owner or holder of a Secured Claim.

51.     "Unsecured Claim" shall mean a claim for which the Claimant does not hold (a) a valid, perfected and enforceable Lien, security interest or other interest in or encumbrance against Debtor or the Debtor's Estate; or (b) a right to setoff to secure the payment of such Claim.  An Unsecured Claim includes, but is not limited to, a Claim for damages

resulting from rejection of any Executory Contract pursuant to Section 365 of the Bankruptcy Code and does not include administrative of priority claims.

52.     "Unsecured Creditor" shall mean the owner or holder of an Unsecured Claim.

## CLAIMS CLASSIFICATION AND TREATMENT

### Class 1

53.     **Classification** –  New York City real estate tax, water, sewer and other liens.   Claims total approximately $0.

54.     **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

55.     **Voting** --  Unimpaired and deemed to have accepted the Plan

### Class 2

56.     **Classification** – Freedom Mortgage  First Mortgage Lien totals approximately $797,000 as of the Petition Date.

57.     **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable contractual rate as it accrues from the Petition Date through the date of payment.

58.     **Voting** –  Unimpaired and deemed to have accepted the Plan

**Class 3**

59.     **Classification** – Huntington Bank.  Second Mortgage Lien Claim totals approximately $115,000 as of the Petition Date.

60.     **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable contractual rate as it accrues from the Petition Date through the date of payment.

61.     **Voting** – Unimpaired and deemed to have accepted the Plan

**Class 4**

62.     **Classification** –   Priority Claims under Sections 507(a)(2), (3), (4), (5), (6), and (7) of the Bankruptcy Code.  No such Claims were scheduled or filed.

63.     **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

64.     **Voting --** Unimpaired and deemed to have accepted the Plan

**Class 5**

65.     **Classification** –  General Unsecured Claims.  Claims total approximately $162,000 based upon filed and scheduled Claims.

66.     **Treatment** – Class 5 and Class 6 Claims are entitled to payment of available Cash up to Allowed Amount of the Class 5 and 6 Claims, after payment of costs of sale, Administrative Expenses, Priority Tax Claims, Class 1, 2, 3 and Class 4 Claims, and Plan Administrator costs as provided for in the Plan.  Class 6 distributions shall be subordinated to the

9

first $42,000 of Cash allocable to Class 6 Claims, and such $42,000 shall be disturbed pro-rata to Class 5 Claims.

67.     **Voting** – Impaired and entitled to vote to accept or reject the Plan.

<u>**Class 6**</u>

68.     **Classification** –   Reiner and Kidline General Unsecured Claims.  Claims total approximately $4,386,347 based upon filed and scheduled Claims.

69.     **Treatment** – Class 5 and Class 6 Claims are entitled to payment of available Cash up to Allowed Amount of the Class 5 and 6 Claims, after payment of costs of sale, Administrative Expenses, Priority Tax Claims, Class 1, 2, 3 and Class 4 Claims, and Plan Administrator costs as provided for in the Plan.  Class 6 distributions shall be subordinated to the first $42,000 of Cash allocable to Class 6 Claims, and such $42,000 shall be disturbed pro-rata to Class 5 Claims.

70.     **Voting** – Impaired and entitled to vote to accept or reject the Plan.

<u>**Class 7**</u>

71.     Classification – Debtor.

72.     **Treatment** – Payment of available Cash after payment of Administrative Expenses, priority tax Claims, Class 1, 2, 3, 4, 5 and 6 Claims.  Under section 1129(a)(15) and 1325(b)(2), the Debtor shall also be obligated to make monthly payments to the Plan Administrator for five years equal to his "monthly disposable income."

73.     **Voting** – Impaired and entitled to vote to accept or reject the Plan.

## UNCLASSIFIED PRIORITY TAX CLAIMS

74.     Priority tax Claims under Sections 507(a)(8) of the Bankruptcy Code total approximately $20,426 based on the Debtor's schedules and filed proofs of claim. The treatment of such Claims shall be payment in full in Cash of the Allowed Claim on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

## ADMINISTRATIVE EXPENSES

75.     Allowed Administrative Expenses shall be paid in full, in cash on the Effective Date, or the date such Administrative Expense becomes Allowed or as soon as practicable thereafter, except to the extent that the holder of an Allowed Administrative Expense agrees to a different treatment; provided, however, that Allowed Administrative Expenses representing obligations incurred in the ordinary course of business or assumed by the Debtor shall be paid in full or performed by the Debtor in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.  As of the Confirmation Date, unpaid Chapter 11 professional fees will total an amount to be determined for Debtor's professionals subject to Bankruptcy Court approval.

76.     Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims, other than Professional Fee Claims, must be filed and served on counsel for the Debtor and Proponent by no later than the thirty days after the Confirmation Date (the "Administrative Claims Bar Date").  Any Person that is required to file and serve a request for payment of an Administrative Claim and fails to timely file and serve such request shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions

under the Plan on account thereof. Objections to requests for payment of Administrative Claims (except for Professional Fee Claims and Administrative Claims incurred in the ordinary course of the Debtor's business) must be filed and served on counsel for the Debtor, Proponent, and the party requesting payment of an Administrative Claim within thirty (30) days of the date such request for payment has been filed.

77.     Unless otherwise ordered by the Bankruptcy Court, and subject to notice and a hearing under section 330 of the Bankruptcy Code, requests for payment of Professional Fee Claims incurred through the Confirmation Date must be filed and served no later than thirty (30) days after the Confirmation Date (the "Professional Fee Claims Bar Date"). The day prior to the Confirmation Date, each Professional shall provide counsel for the Debtor and counsel to the Proponent with a written estimate of the total amount of compensation and expenses for which such Professional expects to seek final compensation and reimbursement pursuant to section 330 of the Bankruptcy Code. Such estimates shall include estimated sums for the preparation and prosecution of any application for final compensation.

78.     The Plan Administrator shall pay from Cash in the Estate all fees payable due as of the Effective Date pursuant to section 1930 of title 28 of the United Sates Code. Thereafter, the Debtor shall pay from Cash in the Estate all United States Trustee quarterly fees under 28 U.S.C. § 1930(a)(6), plus interest due under 31 U.S.C. § 3717, on all disbursements, including plan payments and disbursements in and outside of the ordinary course of business, until the earliest of the entry of a final decree closing the Chapter 11 Case, dismissal of the Chapter 11 Case, or conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.

## MEANS FOR IMPLEMENTATION

79.    **Source of Funds** – Payments under the Plan will be paid from (a) the Property Sale Proceeds, (b) monthly installments of the Debtor's Disposable Income for five years, and (c) amounts recovered by the Plan Administrator.

80.    The Property sold pursuant to sections 1123 and 363 of the Bankruptcy Code.  The sale of the Property shall include the sale of both the Debtor's interest and the non-Debtor spouse's interest under section 363(h) of the Code.  The sale shall be implemented pursuant to the Bidding and Auction Procedures annexed as Exhibit "A" to the Plan.  Prior to or on the Effective Date, the Property shall be sold free and clear of all Liens, Claims, and encumbrances, with any such Liens, Claims, and encumbrances to attach to the Property Sale Proceeds, and disbursed in accordance with the provisions of this Plan.

81.    The Plan Administrator shall be the disbursing agent and shall disburse the sale proceeds.  On the Effective Date, undisputed Lien, Priority and Administrative Claims will be paid or escrowed subject to further order of the Court.  Distributions to the Debtor and Sarah Paneth are subject to the Arbitration and shall be held in escrow by the Plan Administrator subject a final Arbitration award.

82.    Based on the Debtor's analysis of closing disbursements annexed to the Plan as Exhibit B, after mortgages, liens and closing costs, there will be $657,680 of net sale proceeds.  $328,840 is allocable to Sarah Paneth and $328,840 is allocable to the Debtor.  The Debtor's $328,840 shall be held by the Plan Administrator to be distributed under the Plan.  Under the Plan, Administrative and Priority Claims must be paid in full, and the balance paid pro-rata to General Unsecured Creditors, except that that Reiner is subordinating his Claim to the

first $42,000 of other General Unsecured Claims. All of the sale proceeds allocable to Sarah Paneth shall be held by the Plan Administrator subject to an Arbitration award. The sale proceeds allocable to Mendel Paneth's exemption amount shall similarly be held by the Plan Administrator subject to the Arbitration award.

83.     The Property Sale Proceeds will not be sufficient to pay all Claims in full with interest from the Petition Date. Additional distributions shall be made from the proceeds of the prosecution of the Causes of Action by the Plan Administrator and any funds available to the Estate and turned over to the Plan Administrator based on the outcome of the Arbitration. Such net proceeds of Causes of Action and the Arbitration will first be used for unpaid Plan Administrator fees and expenses, and then paid to in the order of priority provided for in the Plan.

84.     Under section 1129(a)(15) and 1325(b)(2), the Debtor shall also be obligated to make monthly payments to the Plan Administrator for five years equal to his "monthly disposable income." The Plan Administrator shall make supplemental distributions to creditors as feasible.

85.     **Sale Approval** -- As part of the sale under the Plan, and in order to ensure consummation of the Plan, the Plan requires that a post-confirmation sale order be entered containing the following findings of fact and conclusions of law: (a) that the terms and conditions of the sale are fair and reasonable, (b) that the sale, and purchase, of the Property pursuant to the Plan, is non-collusive, fair and reasonable and was conducted openly and in good faith, (c) that the transfer of the Property to the purchaser represents an arm's-length transaction and was negotiated in good faith between the parties, (d) that the purchaser, as transferee of the

14

Property, is a good faith purchaser under Bankruptcy Code § 363(m) and, as such, is entitled to the full protection of Bankruptcy Code § 363(m), (e) the sale of the Property to the purchaser was not controlled by an agreement among potential purchasers, (f) that no cause of action exists against the Purchaser or with respect to the sale of the Property to the Purchaser under Bankruptcy Code § 363(n), and (g) that any claims under Bankruptcy Code § 363(n) or any other claims as against the Purchaser are hereby released, waived and discharged.

86. **Release of Liens** -- Except as otherwise provided for in the Plan, on the Effective Date, (a) each holder of a Secured Claim, shall on the Effective Date (x) turn over and release to the Plan Administrator any and all Collateral that secures or purportedly secures such Claim, as they pertain to the properties currently owned by the Debtor or such Lien shall automatically, and without further action by the Debtor or the Plan Administrator, be deemed released, and (y) execute such documents and instruments as the Plan Administrator requests to evidence such Claim holder's release of such property or Lien.

87. **Stamp Tax** -- Pursuant to Bankruptcy Code § 1146(c), (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of the Property by the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness

by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment including without limitation New York City Real Property Transfer Tax and New York State Documentary Tax.

88.     **Execution of Documents** -- Pursuant to section 1142 of the Bankruptcy Code, upon the Effective Date, the Plan Administrator, the Disbursing Agent, the Debtor and any necessary party thereto, are directed to execute, release, and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan. The Plan Administrator shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

89.     **Recording Documents** -- Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transaction contemplated by the Plan, including, but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order.

90.     **Property Turnover at Closing**. The Debtor shall turnover possession of the Property to the Plan Administrator on the Confirmation Date together with all files and

records pertaining to construction documents, Department of Buildings building permits, violations, architectural plans, leases, repair invoices, and tenant correspondence. If the Debtor fails to turnover possession, the Plan Administrator shall be entitled to submit a writ of assistance for Bankruptcy Court approval to obtain the assistance of the United States Marshal to remove the Debtor from the Property and effectuate turnover of the Property and all related files and records pertaining to construction documents, Department of Buildings building permits, violations, architectural plans, leases, repair invoices, and related correspondence.

91.     **Property Marketing**. The Plan Administrator shall retain _____ to market the Property.  The Debtor shall cooperate with any broker, auctioneer, and/or real estate professional to permit reasonable access to the Property for marketing purposes.

92.     **Authorized Action**. Upon the entry of the Confirmation Order, all matters provided under the Plan shall be deemed authorized and approved without any requirement of further action by the Debtor.

93.     **Manner of Payment**. Any payment of Cash made under the Plan may be made either by check drawn on a domestic bank, by wire transfer, or by automated clearing house transfer from a domestic bank, at the option of the Plan Administrator.

94.     **Vesting of Property**. Except as provided for in the Plan, on the Confirmation Date, title to and possession of any and all property of the estate, real or personal, shall be re-vested in the Reorganized Debtor free and clear of all liens, claims, interests and encumbrances of any kind, subject to and except as otherwise provided in this Plan and the Confirmation Order.

## PAYMENT OF CLAIMS AND OBJECTIONS TO CLAIMS

95.     The Plan Administrator shall be disbursing agent under the Plan without a bond.  The Plan Administrator shall have the sole and exclusive right to file objections to claims in the event grounds exist to object to particular claims.  Claims objections must be filed no later than 60 days after the Effective Date.  On the initial distribution date and on each distribution date as may thereafter be necessary, the Plan Administrator shall maintain an undetermined claims distribution reserve for the holders of undetermined claims as of such date in a sum not less than the amount required to pay each such undetermined claim as if such claim was allowed in full.  To the extent that an undetermined claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim shall be released from the undetermined claims distribution reserve and paid to the holder of such Allowed Claim.  After all the amounts of all undetermined claims have been fixed, the balance of the undetermined claims distribution reserve shall thereafter be paid in accordance with the Plan.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

96.     The Debtors Schedules reflect no Executory Contracts or unexpired Leases.

## MANAGEMENT UNDER THE PLAN

97.     Post-confirmation, the Plan shall be implemented by the Plan Administrator, including management of the Property until closing on its sale.

98.     The Plan Administrator shall be appointed on the Confirmation Date.  The Debtor and the Plan Administrator on behalf of the Debtor, shall take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan, as follows:

**(r)** Following the Confirmation Date, the Debtor shall be responsible for supplying the Plan Administrator with the information necessary to complete all post-Confirmation reports required during such periods, and the Plan Administrator shall prepare and file such reports, and pay all post-Confirmation fees charged or assessed against the Estate under 28 U.S.C. § 1930 during such periods.

**(s)** The Plan Administrator shall execute and deliver all documents, and take all actions, necessary to consummate the Plan,

**(t)** The Plan Administrator shall be responsible for making distributions to holders of all Allowed Claims in accordance with the Plan;

**(u)** The Plan Administrator shall be deemed a "party-in-interest" for purposes of filing and prosecuting objections to claims and Causes of Action.

**(v)** The Plan Administrator shall have the exclusive authority and duty to implement the sale of the Property and prosecution of Causes of Action under this Plan and accordingly shall exercise such rights and obligations of the Debtor in accordance with the Plan.

**(w)** The Plan Administrator shall coordinate turnover of property, if any, subject to rejected executory contracts or abandonment or liquidation of any retained Assets and disposing of, and delivering title to others of, or otherwise realizing value of, any remaining Assets;

**(x)** The Plan Administrator and his professionals shall be compensated from the Plan Administrator Fund at a rate of $600 per hour. The Plan Administrator has agreed to retain _____, as bankruptcy counsel at a rate of _____ per hour, and may retain special litigation counsel at their customary rates. Professionals retained by the Plan Administrator shall not be required to file a fee application but shall be required to separate time and expense records between plan administration services and legal services.  The payment of the fees and expenses of the Plan Administrator and the Plan Administrator's retained professionals shall be made first from the Plan Administrator Fund, and then from the proceeds of Causes of Action.

**(y)** The Plan Administrator shall be authorized to obtain and pay out of the Plan Administrator Fund, all reasonably necessary insurance coverage for himself, his agents, representatives, employees, or other independent contractors, if necessary.

**(z)** The Plan Administrator may resign by giving not less than thirty (30) days' prior written notice to the Proponent. Such resignation shall become effective upon the Bankruptcy Court approval of a successor Plan Administrator.

**(aa)** Upon the request of any party in interest, the Bankruptcy Court may remove the Plan Administrator for cause. For purposes of this paragraph, "cause" shall mean (I) an act of fraud, embezzlement or theft in connection with the Plan Administrator's duties or in the course of its engagement in such capacity, (ii) the intentional wrongful damage to the property of the Debtor, or (iii) gross neglect by the Plan Administrator of his duties under the Plan. Unless the Bankruptcy Court orders immediate removal, the Plan

Administrator shall continue to serve until a successor Plan Administrator is appointed, and such appointment becomes effective, in accordance with the Plan.

**(bb)** In the event of a vacancy by reason of the death, incapacity or immediate removal of the Plan Administrator or prospective vacancy by reason of resignation or removal, the Proponent shall appoint a successor Plan Administrator, which appointment shall be effective upon the approval of the Bankruptcy Court on not less than twenty (20) days' notice to parties who have filed a notice of appearance with the Bankruptcy Court during the chapter 11 case pursuant to Bankruptcy Rule 2002 and to all creditors of the Debtor, unless the Bankruptcy Court authorizes otherwise. Every successor Plan Administrator appointed hereunder shall execute, acknowledge, and file with the Bankruptcy Court an instrument accepting such appointment subject to the terms and provisions of the Plan. The successor Plan Administrator, without any further act, shall become vested with all the rights, powers, and duties of the Plan Administrator, provided, however, that no Plan Administrator shall be liable for the acts or omissions of any prior or later Plan Administrator.

**(cc)** Unless otherwise ordered by the Bankruptcy Court, the death, resignation, or removal of the Plan Administrator shall not operate to terminate any agency or employment created by the Plan or invalidates any action theretofore taken by the Plan Administrator.

**(dd)** The Plan Administrator shall have the right at any time to seek and rely upon instructions from the Bankruptcy Court concerning his duties under the Plan or any other document executed in connection therewith, and the Plan Administrator shall be entitled to rely upon such instructions in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon. In the absence of actual knowledge to the contrary, any person dealing with the Plan Administrator shall be entitled to rely on the authority of the Plan Administrator to act on behalf of the Debtor's estate and the Debtor, and shall have no obligation to inquire into the existence of such authority.

**(ee)** After the Effective Date, the Plan Administrator shall maintain books and records but shall not be responsible for preparing and filing tax forms and returns as are required to be filed under applicable law. The Debtor shall bear sole responsibility for filing tax forms and returns required under applicable law.

**(ff)** The Plan Administrator shall turnover to the Debtor all books, records, and files that shall have been delivered to or created by the Plan Administrator as needed for the filing of tax forms and returns, and when such books, records, and files are no longer required.

**(gg)** such other powers as may be vested in or assumed by the Plan Administrator pursuant to the Confirmation Order or any other Bankruptcy Court order, or as necessary and appropriate to carry out the provisions of the Plan.

**(hh)** The Plan Administrator's duties shall cease upon the closing of this Case.

99. Neither the Proponent, the Plan Administrator the Disbursing Agent, nor any of their employees, advisors, attorneys, accountants, financial consultants, contractors, agents, and their successors and assigns, shall have or incur any liability to any holder of a Claim

or Interest, or to any other entity, for any act or omission in connection with, related to, or arising out of, the pursuit of confirmation consummation, or other administration of the Plan or the property to be distributed or otherwise dealt with under the Plan, except for gross negligence or willful misconduct, and in all respects the Proponent, Plan Administrator, Disbursing Agent and each of their employees, advisors, attorneys, accountants, financial consultants, contractors, and agents shall be entitled to rely upon the advice of counsel with respect to its duties and responsibilities under the Plan. No current Holder of a Claim, representative thereof, shall have or pursue any claim or cause of action against the Proponent, Plan Administrator, or Disbursing Agent for making payments in accordance with the Plan, or for implementing the provisions of the Plan. Neither the Proponent, Plan Administrator, Disbursing Agent shall be liable for obligations relating to Allowed Claims to the extent that Allowed Claims are not paid in full, other than as a result of gross negligence or willful misconduct.

## PRESERVATION OF CLAIMS

100.     All Causes of Action, including rights pursuant to Sections 502, 544, 545 and 546 of the Bankruptcy Code, all preference claims pursuant to Section 547 of the Bankruptcy Code, all fraudulent transfer claim pursuant to Section 548 of the Bankruptcy Code, and all claims relating to post-petition transactions under Section 549 of the Bankruptcy Code shall be preserved for the benefit of the Debtor's estate, provided, however, that the Plan Administrator shall have sole authority for prosecuting any such claims.

## RETENTION OF JURISDICTION

101.     Retention of Jurisdiction.  The Court shall have jurisdiction over all matters arising under, arising in, or relating to the Debtor's Bankruptcy Case including, but not

limited to, proceedings: (a) to consider any modification of the Plan under section 1127 of the Bankruptcy Code; (b) to hear and determine all Claims, controversies, suits and disputes against the Debtor to the full extent permitted under 18 U.S.C. §1334 and 28 U.S.C. §157; (c) to hear, determine and enforce all Claims  and causes of action which may exist on behalf of the Debtor or the Debtor's estate, including, but not limited to, any right of the Debtor or the Debtor's Estate to recover assets pursuant to the provisions of the Bankruptcy Code; (d) to hear and determine all requests for compensation and/or reimbursement of expenses which may be made; (e) to value assets of the Estate; (f) To enforce the Confirmation Order, the final decree, and all injunctions therein; (g) to enter an order concluding and terminating the Bankruptcy Case; (h) to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, or the Confirmation Order; (i) to determine all questions and disputes regarding title to the assets of the Debtor; (j) to re-examine Claims which may have been allowed for purposes of voting, and (k) to determine objections which may be filed to any Claims.

## GENERAL PROVISIONS

102.     Headings.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meaning of the Plan.

103.     Disputed Claims.  The Proponent shall hold in escrow the distribution that would be due on account of any Disputed Claim.  No Disputed Claims shall be paid, nor shall distributions be made to a creditor holding a Disputed Claim, until such Claim becomes an Allowed Claim.

104.     Calculation of Time Periods.  Bankruptcy Rule 9006 is incorporated herein for purposes of calculating the dates set forth herein.

22

105. Other Actions. Nothing contained herein shall prevent the Proponent, Debtor, Interest Holders, or Creditors from taking such actions as may be necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

106. Modification of Plan. The Proponent may seek amendments or modifications to the Plan in accordance with section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date, the Proponent may seek to remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan

## INJUNCTION AND PROPERTY OF THE ESTATE

107. Exculpation. Each of Proponent, Disbursing Agent and Plan Administrator, its agents (acting in such capacity), and any professional person employed by Proponent Disbursing Agent and Plan Administrator shall not incur any liability to any Person and/or Entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, confirmation, or consummation of this Plan, the Disclosure Statement, or any other contract, instrument, release, or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Chapter 11 Case or this Plan; provided, however, that the foregoing exculpation from liability will not apply to actions or omissions taken in bad faith or as a result of gross negligence or willful misconduct. Nothing in this Plan shall limit the liability of any professionals to their respective clients for malpractice pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct.

108.     Confirmation Injunction. Other than such liabilities and obligations otherwise assumed or provided hereunder, and as set forth in the Confirmation Order (a) the rights afforded herein and the treatment of all Claims and Interests herein, shall be in exchange for and in complete satisfaction and release of, all Claims and Interests of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, against the Debtor or any of its Assets and properties, (b) on the Effective Date, all such Claims against the Debtor shall be satisfied and released in full, and (c) all Persons shall be precluded from asserting and shall be permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) against the Debtor, its Assets or property, based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

**<u>CLOSING THE CASE</u>**

109.     Upon substantial consummation, under Bankruptcy Rule 3022, the Debtor or the Proponent may move for a final decree to close the Bankruptcy Case and to request such other orders as may be just.

Dated:  New York, New York
             October 25, 2022

                                             BACKENROTH FRANKEL & KRINSKY, LLP
                                             Attorneys for Proponent


                          By:     s/Mark Frankel
                                             800 Third Avenue
                                             Floor 11
                                             New York, New York 10022
                                             (212) 593-1100

## EXHIBIT A to Plan

## BIDDING AND AUCTION PROCEDURES[1]

These Bidding and Auction Procedures are promulgated in connection with the auction sale (the "Sale") of the real property located at 85 Bolivar St, Staten Island, New York (the "Property").

Time and Place of Sale:  The Sale will be held on a date to be announced at the offices of the Plan Administrator, _____, or such other location to be announced.

Sale Pursuant to Chapter 11 Plan:  The Sellers of the Property are Mendel Paneth (the "Debtor") and his non-debtor spouse Sarah Paneth.  The sale shall be conducted pursuant to Bankruptcy Code section 363 and the Chapter 11 Plan of Liquidation (the "Plan") proposed by David Reiner, the Plan proponent ("Proponent").

Sale free and Clear of Liens:  The Sale of the Property shall be conducted pursuant to the Proponent's Plan of Liquidation free and clear of liens, claims and encumbrances, with any such liens, claims and encumbrances to attach to the sale proceeds, and disbursed under the Plan.

Qualification to Bid:   In order to be qualified to bid on the Property, within seven days prior to the commencement of the Sale, each prospective bidder must deliver to the Plan Administrator (a) a bank check in the amount of One Hundred Thousand Dollars ($100,000) (the "Qualifying Deposit") payable to the Plan Administrator (b) evidence reasonably demonstrating such bidder's ability to consummate a sale on the terms proposed, and (c) a written offer to purchase substantially in the form annexed hereto.  No later than one business day before the Sale, each bidder will be notified by the Plan Administrator as to whether the Plan Administrator deems such bidder qualified to bid at the Sale.

Bidding: Bidding shall be conducted openly at the Sale.  The opening bid shall be announced before the Sale.  Minimum bidding increments shall be twenty-five Thousand Dollars ($25,000.00).

Successful Bidder Additional Deposit: At the Sale, once a bidder is determined to have made the highest or best bid for the Property at the Sale (the "Successful Bidder"), bidding shall be

_____

[1] Capitalized terms not defined herein shall have the meaning set forth in the Third Amended Plan of Reorganization (the "Plan") filed in the Bankruptcy Court on December 2, 2021.

deemed closed and no additional bids will be considered. Within one business day after the Successful Bidder is determined, the Successful Bidder shall be required to increase the Qualifying Deposit to an amount equal to ten percent of the winning bid, which amount shall serve as a good faith deposit ("Good Faith Deposit") against payment of the Purchase Price. At the conclusion of the Sale, the Plan Administrator's counsel will return the Qualifying Deposits to all other bidders except Backup Bidder.

Hearing to Approve Sale: Upon notice and application setting forth the basis for sale approval and the findings to be sought in the Sale Order (defined below), a hearing will be conducted by the Bankruptcy Court on approval of the sale to the Successful Bidder, and if the Successful Bidder fails to close, to the Backup Bidder, and on any issue that may exist as to which competing bid is higher or better, before the honorable Nancy H. Lord on a date to be announced, at the United States Bankruptcy Court 271 Cadman Plaza East, Brooklyn, New York, provided however, that unless the notice of hearing states otherwise, such hearing shall be conducted telephonically pursuant to the instructions on the Bankruptcy Court's website.

Sale Approval Order: the sale approval order ("Sale Order") shall approve the Sale, and in connection therewith, the Sale Order shall contain the following findings of fact and conclusions of law: (a) that the Terms and Conditions of the Sale are fair and reasonable, (b) that the Sale and the Purchaser's purchase, of the Property pursuant to the Plan, is non-collusive, fair and reasonable and was conducted openly and in good faith, (c) that the transfer of the Property to the Purchaser represents an arm's-length transaction and was negotiated in good faith between the parties, (d) that the Purchaser, as transferee of the Property, is a good faith Purchaser under Bankruptcy Code § 363(m) and, as such, is entitled to the full protection of Bankruptcy Code § 363(m), (e) the sale of the Property to the Purchaser was not controlled by an agreement among potential purchasers, (f) that no cause of action exists against the Purchaser or with respect to the sale of the Property to the Purchaser under Bankruptcy Code § 363(n), and (g) that any claims under Bankruptcy Code § 363(n) or any other claims as against the Purchaser are hereby released, waived and discharged.

Closing: The Successful Bidder must pay the balance of the Purchase Price for the Property (the difference between the amount of the successful bid and the Good Faith Deposit) by bank check, or wire transfer at the closing of title to the Property (the "Closing"). The Successful Bidder must close title to the Property at a date that is no more than fifteen (15) days after the Order by the Bankruptcy Court is entered, TIME BEING OF THE ESSENCE as to the Successful Bidder, although such date may be extended solely by the Plan Administrator.

Transfer Tax: Under the Plan, pursuant to section 1146(c) Bankruptcy Code, (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of the Property by the

Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment including without limitation New York State Documentary Tax.

Damages for Failure to Close:  Time is of the Essence as Against the Successful Bidder and the failure of the Successful Bidder to either timely pay the additional Qualifying Deposit or timely close for any reason whatsoever (except as otherwise provided below) including its failure to pay the balance of the Purchase Price on the Closing Date, will result in the Plan Administrator retaining the Good Faith Deposit as liquidated damages and the termination of the Successful Bidder's right to acquire the Property under these Bidding and Auction Procedures.  The Successful Bidder shall be obligated to close title to the Property and there is no contingency of any kind or nature that will permit the Successful Bidder to cancel or avoid its obligation under these Bidding and Auction Procedures other than the Sellers' inability to deliver a bargain and sale deed to the Property.  Expenses incurred by the Successful Bidder, or any competing bidder relating to any due diligence, such as obtaining title reports or environmental inspections, shall be the sole responsibility of such bidder, and under no circumstances shall the Sellers, the Proponent the Plan Administrator or their professionals be responsible for, or pay, such expenses.

Backup Bidder:  In the event that the Successful Bidder for the Property fails to tender the payment of the balance of the Purchase Price on the Closing Date, or otherwise perform any of its obligations under these Bidding and Auction Procedures, the Plan Administrator, at its sole option, shall be authorized to sell the Property to the Second Highest Bidder without any further notice without giving credit for the Good Faith Deposit forfeited by the Successful Bidder, and upon such other terms and conditions as the Plan Administrator deems appropriate.  Should the Second Highest Bidder fail to close on the Property, within such time as the parties may agree but not to exceed thirty (30) days after notice from the Plan Administrator to the Second Highest Bidder, the Plan Administrator shall be authorized to sell the Property to the next highest or best bidder, without the necessity of any further notice.  All bidders will be bound by these Bidding and Auction Procedures, including, without limitation, those items set forth in the paragraphs above, except that the Second Highest Bidder must close within thirty (30) days of notification that his bid is accepted.  TIME IS OF THE ESSENCE. as against the Backup Bidder and the failure of the Backup Bidder to timely close for any reason whatsoever (except as otherwise provided below) including its failure to pay the balance of the Purchase Price on the Closing Date, will result in the Plan Administrator retaining the Qualifying Deposit as liquidated damages and the termination of the Backup Bidder's right to acquire the Property under these Bidding and Auction Procedures.  The Backup Bidder shall be obligated to close title to the Property and there is no contingency of any kind or nature that will permit the Backup Bidder to

cancel or avoid its obligation under these Bidding and Auction Procedures other than the Sellers' inability to deliver a bargain and sale deed to the Property. Expenses incurred by the Backup Bidder, or any competing bidder relating to any due diligence, such as obtaining title reports or environmental inspections, shall be the sole responsibility of such bidder, and under no circumstances shall the Sellers, Proponent, Plan Administrator or their professionals be responsible for, or pay, such expenses.

No Representations: the Proponent, the Proponent's professional, the Sellers, and the Debtor's professionals, the Plan Administrator and the Plan Administrator's professionals have not made and do not make any representations as to the physical condition, rents, leases, expenses, operations, value of the land or buildings thereon, or any other matter or thing affecting or related to the Property or the Sale, which might be pertinent to the purchase of the Property, including, without limitation, (i) the current or future real estate tax liability, assessment or valuation of the Property; (ii) the potential qualification of the Property for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (iii) the compliance or non-compliance of the Property, in its current or any future state, with applicable present or future zoning ordinances or other land use law or regulation, or the ability to obtain a change in the zoning or use, or a variance in respect to the Property; (iv) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Property from any source, including, but not limited to, any state, city or federal government or institutional lender; (v) the current or future use of the Property; (vi) the present and future condition and operating state of any and all machinery or equipment on the Property and the present or future structural and physical condition of any building thereon or its suitability for rehabilitation or renovation; (vii) the ownership or state of title of any personal property on the Property; (viii) the presence or absence of any laws, ordinances, rule or regulations issued by any governmental authority, agency or board and any violations thereof; (ix) any present or future issues concerning subdivision or non-subdivision of the Property; or (x) the compliance or non-compliance with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos or other hazardous materials anywhere on the Property. Each bidder shall be deemed to have agreed and acknowledged that no such representations have been made. Neither the Sellers, Proponent nor Plan Administrator is liable or bound in any manner by expressed or implied warranties, guaranties, promises, statements, representations or information pertaining to the Property, made or furnished by the Sellers, Proponent or Plan Administrator or any real estate broker agent, employee, servant or other person or professional representing or purporting to represent the Sellers, Proponent or Plan Administrator unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in writing by the Proponent. For the avoidance of doubt, neither the Sellers nor the Debtor's professionals are authorized to provide any such warranties, guaranties, promises, statements, representations or information.

As Is Sale: The Property is being sold free and clear of all liens, claims and encumbrances, with any such liens, claims and encumbrances to attach to the net proceeds of sale after deduction of

any expenses of sale. Furthermore, the Property is being sold "AS IS", "WHERE IS" "WITH ALL FAULTS", without any representations, covenants, guarantees or warranties of any kind or nature whatsoever and subject to, among other things, (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (e) environmental conditions, including, without limitation, the Property's compliance (or lack of compliance) with environmental laws and the presence or absence of underground fuel storage tanks, any hazardous materials or asbestos anywhere on the Property. By delivering their respective Qualifying Deposits, each bidder is deemed to have acknowledged that it has had the opportunity to review and inspect the Property, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on its own independent investigations and inspections of the Property in making its bid. Neither the Sellers, Proponent nor Plan Administrator nor any of its representatives make any representations or warrantees with respect to the permissible uses of the Property, including but not limited to, the zoning of the Property. All bidders are deemed to have acknowledged that they have conducted their own due diligence in connection with the Property, and are not relying on any information provided by the Sellers, Proponent, Plan Administrator or their professionals.

<u>Deed</u>: The Debtor and Sarah Paneth, or the Plan Administrator acting on the Debtor's and Sarah Paneth's behalf, shall convey the Property by delivery of a bargain and sale deed without covenants against grantor's acts.

<u>Broker</u>: Except _____, neither the Sellers, the Proponent nor the Plan Administrator nor their professionals are liable or responsible for the payment of fees of any broker.

<u>Conduct of Sale</u>: These Bidding and Auction Procedures will be read on the record, or specifically incorporated by reference, at the Sale of the Property. By making a bid for the Property, all bidders will be required to acknowledge these Bidding and Auction Procedures and agree to be bound by them.

<u>Failure to Close</u>: If the Debtor and or Sarah Paneth, or the Plan Administrator on the Debtor's and or Sarah Paneth's behalf, is unable to deliver title to the Property in accordance with these Bidding and Auction Procedures for any reason whatsoever or in the event that the Bankruptcy Court refuses to approve the sale of the Property pursuant, the Plan Administrator's only obligation will be to refund the Good Faith Deposit and or Qualifying Deposit, together with interest earned thereon, if any, to the Successful Bidder, and upon such refund, the Successful Bidder will have no claim or recourse against the Sellers, Proponent, Plan Administrator, or their professionals.

<u>Right to Withdraw Sale</u>:  Subject to Bankruptcy Court approval, the Proponent reserves its right to withdraw the Property from the Sale, either prior or subsequent to the Sale, for any reasonable reason, as the Proponent deems necessary or appropriate.

<u>Breakup Fee</u>: None

<u>Bankruptcy Court Jurisdiction:</u>  The Bankruptcy Court shall determine any disputes concerning the Sale of the Property.  By participating in the Sale, all bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes under the Debtor's pending case.

CONTRACT dated as of the _____ day of _____, 2021 (this "Contract") , between Mendel Paneth and Sarah Paneth, (the "Sellers") and _____ having an address at _____ _____ ("Purchaser").

Sellers and Purchaser hereby covenant and agree as follows:

## 1. Sale of Property

Paragraph 1.01. Sellers shall sell or cause to be sold to Purchaser, and Purchaser shall purchase, at the price and upon the terms and conditions set forth in this Contract: the real property located at 85 Bolivar St, Staten Island, New York (the "Property"). The sale of the Property includes (a) all of its appurtenances, including any estate, right, title, interest, property, claim and demand of Sellers in and to all streets, alleys, rights-of-way, sidewalks, easements, any adjoining gores or strips of land and utility lines or agreements, including, without limitation, all development rights and "air rights"; (b) all improvements, buildings and structures located on or at the Property and the facilities located thereon, and any apparatus, equipment, appliances and fixtures incorporated therein and used exclusively in connection with the operation and occupancy thereof; (c) all plans, specifications, budgets, schedules, surveys, drawings, reports and governmental applications, permits, approvals and licenses issued by any federal, state or local governmental authority or agency pertaining to the ownership, operation, maintenance, development, construction or use of the Property.

Paragraph 1.02. Purchaser acknowledges that the Sale shall be conducted pursuant to the Chapter 11 plan ("Plan") confirmation order confirming the Plan proposed by David Reiner (the "Proponent") in the Debtor's bankruptcy case in the United States Bankruptcy Court for the Eastern District of New York (hereinafter the "Bankruptcy Court"), Case No. 22-41414. The "Bidding and Auction Procedures" (hereinafter the "Bidding Procedures") annexed to the Plan are deemed annexed to this Contract.

Paragraph 1.03. Purchaser acknowledges that this sale is further subject to and governed by (1) the Orders of the Bankruptcy Court including the Plan confirmation order, (2) the provisions of the United States Bankruptcy Code (hereinafter the "Code"), and (3) the laws of the State of New York, to the extent they do not conflict with (1) and (2), above.

## 2. Purchase Price, Acceptable Funds

Paragraph 2.01. The purchase price ("Purchase Price") to be paid by Purchaser to Plan Administrator for the Property is (               ) _____Dollars or such other bid by the Purchaser approved by the Bankruptcy Court, payable as follows:

        (A) _____ Dollars on the signing of this Contract, by Purchaser's check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to Bidding Procedures as defined in Article 3 hereof (the "Down Payment").

        (B) THIS CONTRACT IS "ALL CASH" AS KNOWN IN THE COMMON PARLANCE.  PURCHASER'S OBLIGATIONS UNDER THIS CONTRACT ARE NOT CONDITIONED UPON PURCHASER'S ABILITY TO SECURE FINANCING OF ANY KIND OR NATURE.

        (C) The balance at Closing (as hereinafter defined) in accordance with Section 2.02 hereof (the "Cash Balance")

Paragraph 2.02. All monies payable under this Contract, unless otherwise specified herein, shall be paid by (a) certified checks of Purchaser drawn on any federally insured bank, savings bank, trust company or savings and loan association having a banking office in the City of New York; (b) official bank checks drawn by any such banking institution, payable to the order of Plan Administrator and bearing no endorsements; or (c) wire transfer of immediately available federal funds.  Attorney's Escrow Checks of Purchaser payable to the order of Plan Administrator up to the amount of $1,000.00 in the aggregate shall be acceptable for sums other than the Purchase Price payable to Plan Administrator at Closing.

3. Escrow of Down Payment

Paragraph 3.01. (a) The Down Payment shall be paid by check or checks drawn to the order of and delivered to _____ ("Escrowee").  The Escrowee shall hold the Down Payment in escrow in a non-interest-bearing IOLA Account until the Closing or sooner termination of this Contract and shall pay over or apply the Down Payment in accordance with the terms of this section.  At the Closing, the Down Payment shall be paid by Escrowee in accordance with Bidding Procedures.  If for any reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party of such demand. If Escrowee does not receive a written objection from the other party to the proposed payment within 10 business days after the giving of such notice, Escrowee is hereby authorized to make such payment.  If Escrowee does receive such written objection within such 10-day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the parties to this Contract or pursuant to an

order of the Bankruptcy Court. However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest, if any, thereon, with the clerk of the Bankruptcy Court. Escrowee shall give written notice of such deposit to Plan Administrator and Purchaser. Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this Contract or involving gross negligence. Sellers and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this Contractor involving gross negligence on the part of the Escrowee.

(c) Escrowee or any member of its firm shall be permitted to act as counsel for the Plan Administrator in any dispute as to the disbursement of the Down Payment or any other dispute between the parties whether or not Escrowee is in possession of the Down Payment and continues to act as Escrowee.

(d) Escrowee acknowledges receipt of the Down Payment by certified, bank check subject to collection or wire transmission and Escrowee's agreement to these provisions by signing in the place indicated on the signature page of this contact.

4. The Closing

Paragraph 4.01. The conveyance of title to the Property by the Sellers to Purchaser, and payment of the Cash Balance by Purchaser shall take place 15 days following the entry of an Order approving the Contract and the transaction embodied therein if that is a business day, and if not, the following business day (the "Closing"). The Closing is to be held at the office of the Escrowee, or such other location as designated by the Plan Administrator within the Eastern District of New York. Purchaser will have a one time right to adjourn the Closing for up to five Business Days from the original date (such adjourned date, "Purchaser's Mandatory Closing Date"). Time is of the essence with respect to Purchaser's obligations to close title in accordance with this Contract on or before Purchaser's Mandatory Closing Date.

5. Acknowledgments and Representations of Purchaser

Purchaser acknowledges and represents that:

Paragraph 5.01. Purchaser has inspected the Property, made all appropriate inquiries into the previous ownership and uses of the Property, is fully familiar with the physical condition and

state of repair thereof, and shall accept the Property "as is" and in their present condition, including, without limitation, the environmental conditions as reflected in the Terms of Sale annexed hereto, without any reduction of the Purchase Price for any change in such condition by any reason thereof subsequent to the date of this Contract.  The Terms of Sale set forth conditions which Purchaser agrees to accept, including any covenant, easement, and/or deed restriction, and any other future obligation relating thereto.

Paragraph 5.02. Before entering into this Contract, Purchaser has made such examination of the Property, the physical condition and state of repair thereof including the environmental conditions. Purchaser acknowledges that it is an experienced real estate owner/operator and is relying solely on its own expertise and investigations and inspections in entering into this Contract and has not been induced by and has not relied upon any representations, warranties, or statements, whether express or implied, made by Sellers or any agent, employee, or other representative of Sellers or by any other person representing or purporting to represent Sellers or Proponent or Plan Administrator, which are not expressly set forth in this Contract, whether or not any such representations, warranties or statements were made in writing or orally.

Paragraph 5.03. In the event of any default by the Purchaser in the terms of this Contract, the damages which are due to the Sellers, by reason of said default, shall be deemed liquidated in the amount of the Down Payment, as Sellers' sole remedy, it being agreed that Sellers' damages in case of such default might be impossible to ascertain with mathematical precision and that the Down Payment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

Paragraph 5.04. Purchaser represents that (a) it has the legal power, right and authority to enter into this Agreement and to consummate the transactions contemplated hereby and that all requisite action has been taken by Purchaser in connection with the entering into this Contract and the consummation of the transactions contemplated hereby;  (b) this Contract and all documents required hereby to be executed by Purchaser are and will be valid, legally binding obligations of and enforceable against Purchaser in accordance with their terms (c) Purchaser, and all direct or indirect beneficial owners of Purchaser, are in compliance with all applicable laws, statutes, rules and regulations of any federal, state or local governmental authority in the United States of America, including the requirements of Executive Order No. 13224, 66 Fed. Reg. 49079 (Sept. 25, 2001) (the "Order") and other similar requirements contained in the rules and regulations of the Office of Foreign Asset Control, Department of the Treasury ("OFAC") and in any related enabling legislation or other Executive Orders (collectively, the "Orders"). Neither Purchaser nor any of the direct or indirect beneficial owners of Purchaser  (i) is listed on the Specially Designated Nationals and Blocked Persons List maintained by OFAC pursuant to the Order and/or on any other list of terrorists or terrorist organizations maintained pursuant to any of the rules and regulations of OFAC or pursuant to any other applicable Orders (such lists are collectively referred to as the "Lists") or is owned or controlled by, or acts for or on behalf of, any Person on the Lists or who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (ii) has been arrested for money laundering or for

4

predicate crimes to money laundering, convicted or pled nolo contendere to charges involving money laundering or predicate crimes to money laundering; or (iii) has been determined by competent authority to be subject to the prohibitions contained in the Orders; (iv) is owned or controlled by, nor acts for or on behalf of, any natural person or entity (a "Person") on the Lists or any other Person who has been determined by competent authority to be subject to the prohibitions contained in the Orders; (v) will transfer or permit the transfer of any interest in Purchaser or such parties to any Person who is, or whose beneficial owners are, listed on the Lists; or (vi) will assign this Agreement or any interest herein, to any Person who is listed on the Lists or who is engaged in illegal activities.

6.  Destruction, Damage or Condemnation

Paragraph 6.01. The provisions of Section 5-1311 of the General Obligations Law shall not apply to the sale and purchase provided for in this Contract and Purchaser agrees to close title to the Property regardless of any destruction, damage or condemnation that occurs after the execution and delivery of this Contract.

7.  Closing Obligations

At the closing, Sellers, or the Plan Administrator on the Sellers' behalf, shall execute and/or deliver or cause to be executed and/or delivered to Purchaser the following:

Paragraph 7.01. A bargain and sale deed without covenants against grantor's acts, executed by the Sellers, or the Plan Administrator on the Sellers' behalf, in proper form for recording so as to convey to Purchaser the fee title to the Property, subject to recorded encumbrances and the other conditions of this Contract.

Paragraph 7.02. All required New York City and State transfer tax returns executed by the Sellers, or the Plan Administrator on the Sellers's behalf, to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.

Paragraph 7.03. The right to possession of the Property in condition required by this Contract, subject to the provisions hereinabove and to the provisions of the Code and the laws of the State of New York governing the rights to possession upon the conveyance of the deed subject to any Order of the Bankruptcy Court and the Bidding Procedures. Sellers shall not be obligated to bring any motion or proceeding for the purpose of obtaining possession of any part of the Property, or to remove any tenant or occupant therefrom after delivery of the Deed.

Paragraph 7.05. Any other documents required by this Contract or by law to be delivered by Sellers to consummate this transaction.

8.  Purchaser's Closing Obligations

At the Closing, Purchaser shall execute and/or deliver:

Paragraph 8.01.  The Cash Balance to the Plan Administrator.

Paragraph 8.02.  All required New York City and State transfer tax returns, and cause all such returns to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.  Purchaser will pay any and all applicable transfer taxes and recording fees.

Paragraph 8.03.  Any other documents required by this Contract or by law or reasonably required by Sellers to be executed and/or delivered by Purchaser to consummate this transaction.

9.  Apportionments

Paragraph 9.01. The parties specifically acknowledge that there shall be no apportionments made as of the date of Closing, whether for taxes, water or sewer charges, emergency repair liens, assessments, rents, fuel, or any other matters relating hereto.

10.  Objections to Sale

Paragraph 10.01. This Contract shall automatically terminate if the Court rejects the Sale or if Sellers shall be unable to cause title to the Property to be conveyed to Purchaser at the Closing Date or any adjournments thereof in accordance with the provisions of this Contract and the Bidding Procedures.  Purchaser nevertheless may elect either (i) to accept such title as Sellers may be able to convey, but without any abatement of or other credit to the Purchase Price or liability on the part of Sellers; or (ii) to terminate this Contract. The sole liability of Sellers shall be to refund the Down Payment and interest thereon, if any, to the Purchaser and this Contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability.  Neither Sellers nor Plan Administrator shall be required to bring any action or proceeding or to incur any expense to cure any title defect or to enable Sellers otherwise to comply with the provisions of this Contract, except as may otherwise be provided in this Contract.

Paragraph 10.02. Purchaser shall take title to the Property "as is" and subject to: any state of facts an accurate survey may show; encroachments, covenants, easements, and restrictions of record, if any; violations, fines, penalties, zoning regulations, and ordinances of the City of New York.  Purchaser is aware of and agrees to the Terms of Sale which are attached to this Contract and which are incorporated in this Contract by this reference as though fully set forth herein at length.

11.  Notices

Paragraph 11.01. All notices under this Contract shall be in writing and shall be delivered personally, by nationally recognized overnight courier, addressed to Plan Administrator's Attorney, on behalf of the Sellers, at the address set forth below, and to Purchaser addressed to Purchaser's Attorney at the address set forth below.

Seller's attorneys,

Purchaser's Attorney:

## 12. Limitations on Survival of Representations, Warranties, Covenants and other Obligations

Paragraph 12.01. Except as otherwise expressly set forth in this Contract, no representations, warranties, covenants or other obligations of Sellers or Plan Administrator and/or Purchaser set forth herein shall survive the Closing except as specifically provided to survive, and no action based thereon shall be commenced after the Closing except as to such representations specifically provided to survive.

Paragraph 12.02. The delivery of the deed by the Sellers and the acceptance thereof by Purchaser shall be deemed the full performance and discharge of every obligation on the part of Sellers and or Plan Administrator to be performed hereunder, except those obligations, if any, of Sellers and or Plan Administrator which are expressly stated in this Contract to survive.

## 13. Assignment of Contract

Paragraph 13.01. Purchaser shall not assign this Contract or its rights hereunder without the prior written consent of the Plan Administrator, whose consent will not be unreasonably withheld or delayed. Additionally, Purchaser may assign its rights under this Contract, but only immediately before the Closing and only simultaneously with the payment of the Cash Balance, to any wholly owned subsidiary of Purchaser, or to any entity in which Purchaser, or its principals, has an equity interest of at least fifty-one (51%) percent and control of management (a "Controlled Entity"), upon appropriate proof of same delivered to Plan Administrator. Any purported assignment without Plan Administrator's consent or that is not to a Controlled Entity with proof of such relationship given to Plan Administrator shall be void. Any sale, transfer or assignment of any interests in Purchaser will be deemed an assignment of this Contract and is subject to the same conditions as an assignment of this Contract. Nevertheless, an assignment of Purchaser's rights under this Contract, if and when consented to by Plan Administrator, shall not

be effective unless and until an executed counterpart of the instrument of assignment and of an assumption agreement by the assignee shall have been delivered to Plan Administrator.

Paragraph 13.02. Sellers shall assign pending tax certiorari actions, if any, to Purchaser without any representations or warranties, and without any further obligation of Sellers, except to execute such documents as may be necessary to effectuate such assignment.

14. Miscellaneous Provisions

Paragraph 14.01 THE PROVISIONS OF THE BIDDING PROCEDURES AND THE ORDERS OF THE COURT ARE A PART OF THIS CONTRACT. ANY CONFLICT WITH SUCH IN THIS CONTRACT WILL NOT BE DEEMED TO AMEND OR ALTER SAID PROCEDURES OR ORDERS.

Paragraph 14.02. Subject to the provisions of Paragraph 14.01, this Contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated hereby, and all prior agreements, understandings, representations and statements, oral or written, are merged into this Contract. Neither this Contract nor any provision hereof may be waived, modified, amended, discharged, or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge, or termination is sought, and then only to the extent set forth in such instrument.

Paragraph 14.03. This Contract shall be governed by, and construed in accordance with, the Code and the Orders of the Bankruptcy Court and, where it does not conflict with the Code or any Order of the Bankruptcy Court or the Bidding Procedures, the laws of the State of New York. The Bankruptcy Court shall have the exclusive jurisdiction to determine any disputes concerning the sale of the Property or any other matters under this Contract.

Paragraph 14.04. The captions in this Contract are inserted for convenience or reference only and in no way define, describe, or limit the scope or intent of this Contract or any of the provisions hereof.

Paragraph 14.05. This Contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

Paragraph 14.06. This Contract shall not be binding or effective until properly executed and delivered by Plan Administrator and Purchaser, together with all amounts required to be paid pursuant to 2.0l (A) hereto. This Contract may be executed in counterparts each of which will constitute an original and all of which, when taken together, will constitute one and the same agreement. A signed counterpart of this Contract delivered by electronic transmission will be treated as an original.

Paragraph 14.07. As used in this Contract, the masculine shall include the feminine and neuter, the singular shall include the plural, and the plural shall include the singular, as the context may require.

Paragraph 14.08. Subject to Paragraph 14.01, if the provisions of any schedule or rider to this Contract are inconsistent with the provisions of this Contract, the provisions of such schedule or rider shall prevail.

IN WITNESS WHEREOF, the parties hereto have executed this Contract as of the date first above written.

Mendel Paneth and Sarah Paneth, Sellers          Purchaser:


By: _____          By: _____
    Name:                                                        Name:
    Title:                                                         Title:
_____, Escrowee:


By: _____
    Name:
    Title:

**Exhibit B to Plan**

ESTIMATED PAYOFFS AT CLOSING:

| | |
|---|---|
| **Freedom Mortgage** | $797,000 - payoff check at closing; |
| **Huntington Bank HELOC** | $115,000 - payoff check at closing |
| **NYS Department of Taxation** | $7,600 - payoff check at closing |
| **DiTomasso Real Estate** | $49,800 - to be held in Settlement Agent's Escrow Account until Fee Application is approved by the Court |
| **Merlino & Gonzalez** | $1,500 - to be held in Settlement Agent's Escrow Account until Fee Application is approved by the Court |
| **Transfer taxes plus recording fees** | $31,420 |

==========
Total Estimated Closing costs $1,002,320

Estimated net proceeds: $657,680


**Split of the net proceeds between the Debtor and the Non-Debtor Spouse**
**$657,680 / 2 = $328,840**

| | |
|---|---|
| **SARAH PANETH** | $328,840 - payable at closing |
| **MENDEL PANETH** | $179,975 - payable at closing (homestead exemption) |
| **MENDEL PANETH** | $148,865 - to be held in the Debtor-in-Possession account |